IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN D. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-913-KAJ |
| ) | |
| RAFAEL WILLIAMS, PHILLIP ) | |
| THOMAS, NURSE JACKIE, STAN ) | |
| TAYLOR, CORPORAL BROWN, JOHN ) | |
| DOE 1, JOHN DOE 2, JOHN DOE 3, ) | |
| FIRST CORRECTIONAL MEDICAL, ) | |
| DIANE HERNANDEZ, DOCTOR ) | |
| CORKIN, DOCTOR SHAH, DOCTOR ) | |
| ALLIE SITTIE, and DOCTOR ) | |
| ROACH, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

---

Kevin D. Miller, Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977; *pro se* plaintiff.

Daniel L. McKenty, Esq., Dana M. Spring, Esq., 824 Market Street, 4th Floor, P.O. Box 397, Wilmington, DE 19899; Counsel for defendants.

---

September 23, 2005
Wilmington, Delaware

*[signature]*
JORDAN, District Judge

## I. INTRODUCTION

Before me are Motions to Dismiss (Docket item ["D.I."] 51; the "Motion"; D.I 53) filed by defendants First Correctional Medical ("FCM"), Dr. Niranjana Shah, Dr. Sitta Gombeh-Alie, Diane Hernandez, and Nurse Jackie Sullivan[1] (collectively, the "FCM Defendants"). Also before me is a Motion for Protective Order (D.I. 40) filed by Raphael Williams, Stan Taylor, and Phillip Thomas (collectively the "State Defendants"), as well as a Motion for Extension of Time (D.I. 49) and a Motion for Summary Judgment (D.I. 46), both filed by the plaintiff, Kevin D. Miller ("Miller"), For the reasons that follow, the Motions to Dismiss will be granted and the remaining motions will be denied as moot.

## II. BACKGROUND

The facts and procedural background of this case are set forth in a prior opinion, *Miller v. Williams*, No. 03-913, 2005 WL 1353336 (D. Del. June 7, 2005) (dismissing case against State Defendants). FCM is under contract with the Delaware State Department of Corrections ("Department") to care for the health and medical needs of inmates in the Department's custody. (D.I. 35 at ¶ 6.) Miller, a *pro se* litigant incarcerated at the Delaware Correctional Center in Smyrna, Delaware alleges that FCM Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. (D.I. 37 at ¶ 8.) Specifically, Miller alleges that FCM Defendants acted

---

[1]Defendant Jackie Sullivan, a former FCM employee, adopts the Motion filed by defendants FCM, Dr. Niranjana Shah, Dr. Sitta Gombeh-Alie, and Diane Hernandez. (D.I. 53 at ¶ 3.)

1

with negligence and exercised a "deliberate indifference to his serious medical needs" (D.I. 37 at ¶ 11) that developed as a result of injuries to his "back, tailbone, neck and arm" (D.I. 2, Attachment ("Attach.") 1 at 1). Miller alleges that he sustained his injuries from a fall on October 16, 2002 while in the Department's custody. (*Id.*) Additionally, Miller alleges that FCM has denied his request for an MRI scan, which he contends would allow the doctors to "fully diagnose the extent of his injuries." (D.I. 2, Attach. 1 at 8; D.I. 54 at ¶ 11.)

FCM Defendants have all been involved to some degree in treating Miller subsequent to his October 2002 fall. (D.I. 2, Attach. 1 at 2-8.) Miller has repeatedly complained of back pain and has been seen by FCM personnel at least 13 times between October 2002 and July 2003. (*Id.*) In the course of his treatment, Miller has been examined or treated by four different doctors and a physician's assistant. (*Id.*) He has received prescription medicine, had X-rays taken of his lower back, and was offered physical therapy. (*Id.*) The X-ray taken of Miller's lower back was negative for spinal injury. (*Id.* at 4-5).

## III.   STANDARD OF REVIEW

### A.   Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn from the face of the complaint. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003).

2

In the case of a *pro se* plaintiff, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). A *pro se* complaint can only be dismissed for failure to state a claim if it appears "beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**B.     Eighth Amendment Standard**

To state a claim under the Eighth Amendment for denial of medical care, a plaintiff must show that the defendant was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference is demonstrated when prison authorities "prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Deliberate indifference also occurs in instances where a doctor "insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). Physician negligence in diagnosing or treating a medical condition, however, does not state an Eighth Amendment claim. *Estelle*, 429 U.S. at 106.

Additionally, a disagreement between a plaintiff and medical personnel as to a diagnosis does not constitute deliberate indifference. *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987). Prison medical authorities have considerable latitude in the

diagnosis and treatment of inmate patients. *Inmates of Allegheny County Jail*, 612 F.2d at 762. Therefore, as long as a physician exercises professional judgment, his behavior does not violate a prisoner's constitutional rights. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

The Third Circuit has found that a serious medical need is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

## IV. DISCUSSION

Miller alleges that he received "improper and inadequate medical care" for his back injury because FCM Defendants were deliberately indifferent to his serious medical needs. (D.I. 37 at ¶ 8.) Miller's allegations do not meet the standard of deliberate indifference. Miller was seen by medical personnel on numerous occasions, and in a timely fashion. During his visits, he was examined, received prescription medicine, had X-rays taken, and received recommendations for physical therapy. (D.I. 2, Attach. 1 at 2-8.)

The extent and quality of Miller's treatments certainly do not indicate that FCM was indifferent to his needs. Miller was not denied access to physicians capable of evaluating his need for treatment. Also, Miller received pain medication and muscle relaxers, and while some of the medications were not effective for him, this course of treatment for back spasms did not expose Miller to substantial risk or painful treatment procedures. Accordingly, even without addressing whether Miller's back pain was a

4

"serious medical need," it is clear that FCM Defendants were not deliberately indifferent to Miller's medical complaints in the treatment they provided to him.

In addition to alleging civil rights violations based on the medical treatment provided, Miller also contends that an MRI of his back is necessary to provide a proper diagnosis of his condition. (D.I. 54 at ¶ 6.) Miller further asserts that in the absence of a proper diagnosis, he is unable to obtain adequate medical treatment. (D.I. 54 at ¶ 9.) This claim also fails to rise to a violation of civil rights, as "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment" because it is a "classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107.

Considering the latitude prison medical authorities are afforded by courts in providing medical care to inmates, FCM's failure to perform an MRI cannot be seen as evidence of deliberate indifference to his medical needs. Miller's desire to have an MRI, despite FCM's conclusion that further testing was unwarranted, represents nothing more than a disagreement between patient and doctor on a point requiring medical expertise. Viewed in this light, it is clear that FCM Defendants were not deliberately indifferent with respect to Miller's request for an MRI.

## IV. CONCLUSION

Accordingly, the Motions to Dismiss (D.I. 51; D.I. 53) will be granted and State Defendants' Motion for Protective Order (D.I. 40), Miller's Motion for Extension of Time (D.I. 49), and Motion for Summary Judgment (D.I. 46) will all be denied as moot. An appropriate order will follow.